IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAN M. GRAY, SR., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 22-1162-GBW |
| | : |
| CLAIRE DEMATTEIS, *et al.*, | : |
| | : |
| Defendants. | : |

Sean M. Gray, Smyrna, Delaware – *Pro se* Plaintiff

Zachary S. Stirparo, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Claire DeMatteis, Dr. Erskins, Michael Records, Lt. Holsten-Jones, Kolawole Akinbayo, Sgt. Keith Burns, Jasvir Kaur, William Ngwa, Dennis Kandash, John May, and Monroe B. Hudson Jr.

Brett Thomas Norton, Dawn C. Doherty, and Georgia Catherine Pham, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, Delaware – Counsel for Dr. Erskins, Jasvir Kaur, William Ngwa, Dennis Kandash, and John May

**MEMORANDUM OPINION**

December 31, 2024
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I. INTRODUCTION

On September 1, 2022, Plaintiff Sean M. Gray, Sr., initiated this *pro se* action, bringing civil rights claims under 42 U.S.C. § 1983 against Defendants Claire DeMatteis, Dr. Erskins, Michael Records, Lt. Holsten-Jones, Kolawole Akinbayo, Sgt. Keith Burns, Jasvir Kaur, William Ngwa, Dennis Kandash, John May, and Monroe B. Hudson Jr. (D.I. 2.) Plaintiff is an inmate at James T. Vaughn Correctional Center (JTVCC) in Smyrna, Delaware (*id.*), proceeding *in forma pauperis* (D.I. 4), and the Amended Complaint is the operative pleading (D.I. 12). Now pending before the Court are Defendants' Motions to Dismiss the Amended Complaint (D.I. 23, 24), to which Plaintiff has responded in opposition (D.I. 30).

## II. BACKGROUND

According to the Amended Complaint, on or about July 26, 2020, Plaintiff was housed in Unit 2K at the Howard R. Young Correction Institution (HRYCI) in Wilmington, Delaware, on pretrial detention. (D.I. 12 at 2-3.) That day, around 2:20 PM, a physical altercation broke out in Unit 2K, and Defendant Burns, the sergeant overseeing the unit, commanded all inmates to return to their assigned cells and secure the doors. (*Id.* at 3.) Plaintiff and the other inmates housed in Unit 2K were unable to comply with Defendant Burns' command because Defendant Burns

1

failed to unlock the cell doors from the command module, so Plaintiff stood next to his assigned cell. (*Id.*)

A Quick Response Team then entered Unit 2K. (*Id.*) A member of the team, Officer Miller (not named as a Defendant in this action), discharged pepper spray into the unit, then slipped on an area of the floor that was wet with pepper spray, and accidentally sprayed the left side of Plaintiff's body, from his left eye down to his lower leg. (*Id.*) Approximately one hour after the incident, Plaintiff's left eye had no central vision; "it appeared to be a 'black spot' or 'hole' where [Plaintiff] previously had vision." (*Id.* at 3-4.) Plaintiff informed Defendant Burns that he was experiencing a medical emergency and, in response, Defendant Burns told Plaintiff that he "should be okay in 30-40 minutes." (*Id.* at 4.) Plaintiff waited and, when his vision did not return, he submitted a sick call request. (*Id.*)

Approximately two days later, Plaintiff was examined by a nurse who was unable to identify the problem with his eye and escalated the issue. (*Id.*) A week later, Defendant Ngwa, a nurse practitioner, examined Plaintiff's eye and also was unable to diagnose the problem. Thus, Defendant Ngwa escalated the issue to the eye care provider. (*Id.*) More than a month later, on September 14, 2020,[1] Defendant Kaur, a different nurse practitioner, performed a chronic care check on

---

[1] The Court notes that all facts alleged prior to this point occurred outside of the two-year window preceding the filing of the Complaint. (*See* D.I. 2.)

Plaintiff and informed Plaintiff that "the escalation to the eye care provider was noted, but not ordered nor scheduled." (*Id.*)

In October 2020, Plaintiff still had not been seen by the eye care provider; thus, he filed a grievance. (*Id.*) After Plaintiff filed the grievance, he was informed that an appointment with the eye care provider had been scheduled. (*Id.*) The next month, Plaintiff submitted additional sick requests to inquire about the scheduled appointment, and the month after that, Plaintiff received a Centurion Healthcare memorandum confirming that a "consult was submitted for Optometry for [Plaintiff's] eye exam" on September 14, 2020. (*Id.*)

One week later, however, Plaintiff received a second Centurion Healthcare memorandum, which informed Plaintiff: "Eye doctor visits and chronic care visits are postponed until COVID restrictions are lifted." (*Id.* at 4-5.) The memorandum also informed Plaintiff: "Rest assured, medical staff will continue to be on-site 24/7 for medication passes, administrative requests, and emergencies." (*Id.* at 5.) Based on this, Plaintiff asserts that the COVID restrictions put in place by Defendants DeMatteis and Akinbayo were "deliberately indifferent to those in need of on-going and/or first instance emergency medical situations," such as Plaintiff's loss of vision. (*Id.*)

From December 2020 through June 2021, Plaintiff continued to file sick call requests and grievances regarding his loss of vision. (*Id.*) On June 28, 2021,

Plaintiff was seen by the HRYCI eye care provider, who identified an ocular issue after dilating Plaintiff's left eye, deemed the issue to be critical, and escalated the problem to an outside eye care specialist. (*Id.*)

The next week, Defendant Holsten-Jones, the HRYCI Grievance Officer, held a medical grievance hearing during which Plaintiff's eye care related grievance was denied. (*Id.*) The same day, Plaintiff appealed Defendant Holsten-Jones' decision. The next month, Defendant Records denied Plaintiff's appeal and noted that Plaintiff had "fully exhausted all available administrative remedies." (*Id.*)

Following the escalation and referral of the HRYCI eye care provider, on a date unspecified in the Amended Complaint, Plaintiff was seen by an outside ophthalmologist. (*Id.* at 6.) The ophthalmologist created a three-dimensional scan of Plaintiff's left eye and noted that, if Plaintiff had been seen as soon as possible, "remedial treatment options" would have been available. (*Id.*) The ophthalmologist also noted that "the pepper spray/mace did not cause the overall issue." (*Id.*) The ophthalmologist told Plaintiff that, at this point, the only possible treatment was an injection into the eye. Plaintiff agreed to the injection into the eye. (*Id.*) During a follow up appointment in November 2021, the ophthalmologist noted that the injection had not improved Plaintiff's vision. (*Id.*)

As of the filing of the Amended Complaint, on March 27, 2023, Plaintiff was "still visually impaired with no central vision in [his] left eye." (*Id.*) This

4

impairment has affected Plaintiff's depth perception, ability to read, and tolerance for direct sunlight and bright lights. (*Id.*) Thus, the Amended Complaint asserts that the foregoing is an irreparable injury to Plaintiff. (*Id.* at 10-12.)

The Amended Complaint further asserts that the foregoing has violated Plaintiff's civil rights, pursuant to the Fifth, Eighth, and Fourteenth Amendments, 42. U.S.C. §§ 1983 and 1988, and Article 1, Section 11 of the Delaware Constitution. (*Id.* 6, 10-12.) In three causes of action, the Amended Complaint asserts that the Defendants violated Plaintiff's civil rights by implementing a COVID policy that delayed Plaintiff's eye care and, in so doing, Defendants acted with deliberate indifference to Plaintiff's need for care, lacked proper regard for Plaintiff's health, and subjected Plaintiff to cruel and unusual punishment, among other wrongs. (*Id.* at 10-12.)

The Amended Complaint asserts that Defendants DeMatteis, Records, Holsten-Jones, Akinbayo, Burns, and Hudson were "acting under the color of State law" at all times relevant to the facts alleged. (*Id.* at 7-9.) The Amended Complaint also appears to name the remaining Defendants Erskins, Kaur, Ngwa, Kandash, and May in their official capacities. (*Id.* at 1-2.) The Amended Complaint also asserts that all Defendants "engaged in all conduct, acts, and omissions alleged herein against the Plaintiff." (*Id.* at 2.)

5

Based on the foregoing, the Amended Complaint seeks relief as follows: a declaration that Defendants violated the Constitution of the United States and the Constitution of the State of Delaware; compensatory damages to Plaintiff for pain, suffering, mental anguish, and emotional distress; punitive damages to Plaintiff imposed against all Defendants; and attorney's fees, costs, expenses, and any further relief the Court deems appropriate. (*Id.* at 12-13.)

## III. LEGAL STANDARD

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241

(3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   DISCUSSION

Upon review of the Amended Complaint, and with the benefit of adversarial briefing, the Court concludes that the Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, Federal Rule of Civil Procedure 12(b)(6) warrants dismissal of this action.

First, the Amended Complaint alleges that all Defendants "engaged in all

conduct, acts, and omissions alleged herein against the Plaintiff," D.I. 12 at 2, and draws conclusions against all Defendants in its three causes of action, *id.* at 10-12, yet the Amended Complaint makes no specific factual allegations against Defendants Erskins, Kandash, May, or Hudson, *see id.* at 1-13. The Court cannot credit bald assertions and legal conclusions in the absence of supporting factual allegations, *see Iqbal*, 556 U.S. at 679, and a defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Accordingly, the Court cannot credit the Amended Complaint's unsupported assertions and conclusions about all Defendants, *see* D.I. 12 at 2, 10-12, and Defendants Erskins, Kandash, May, and Hudson must be dismissed from this action, as the Amended Complaint fails to state claims against them.

Second, the Amended Complaint alleges that Defendants DeMatteis and Akinbayo put COVID restrictions in place that were "deliberately indifferent to those in need of on-going and/or first instance emergency medical situations." (D.I. 12 at 5.) Yet the Amended Complaint acknowledges that, even though the HRYCI COVID policy put restrictions on eye doctor and chronic care visits, *see id.* at 4, the policy did not put restrictions on emergency treatment, *see id.* at 5 ("Both of the memos were preprinted with, 'Rest assured, medical staff will continue to be on-site 24/7 for medication passes, administrative requests, and emergencies.'").

8

Other courts have found no reasonable inference of deliberate indifference from similar pandemic-related policies and suspensions. *See, e.g., Jones v. Sorbu*, No. CV 20-5270-KSM, 2021 WL 365853, at *6 (E.D. Pa. Feb. 3, 2021); *Keating v. Meade*, No. 1:20CV550 (LO/TCB), 2021 WL 120944, at *5 (E.D. Va. Jan. 12, 2021); *Perez v. Chester CI*, No. 20-CV-4562, 2020 WL 7384888, at *6 (E.D. Pa. Dec. 16, 2020). Likewise, this Court finds no reasonable inference of deliberate indifference from the pandemic-related policy, suspending non-emergent medical treatment, alleged in the Amended Complaint. *See id.* As such, the Amended Complaint fails to state claims upon which relief can be granted against Defendants DeMatteis and Akinbayo.

Third, the Amended Complaint alleges that Defendant Holsten-Jones denied Plaintiff's grievance at a hearing on July 7, 2021, and that Defendant Records denied Plaintiff's appeal of Defendant's Holsten-Jones' decision on August 27, 2021. (D.I. 12 at 5.) Any claim based on Defendants' involvement in the grievance process warrants dismissal because inmates do not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). As such, the Amended Complaint fails to state claims upon which relief can be granted against Defendants Holsten-Jones and Records.

Fourth, the Amended Complaint alleges that Defendant Ngwa inspected

Plaintiff's eye on August 4, 2020, was unable to make a diagnosis, and escalated Plaintiff's care to the eye care provider, and that Defendant Kaur then performed a chronic care check on Plaintiff on September 14, 2020, during which Defendant Kaur informed Plaintiff that "the escalation to the eye care provider was noted, but not ordered nor scheduled." (D.I. 12 at 4.) A Centurion Healthcare memorandum later confirmed that a "consult was submitted for Optometry for [Plaintiff's] eye exam" on the date of Defendant Kaur's chronic care check. (*Id.*)

Even when viewed in the light most favorable to Plaintiff, the Court cannot reasonably infer from the above allegations that either Defendant Ngwa or Kaur provided Plaintiff with medical treatment sufficient to establish a constitutional deprivation.[2] *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (holding that treatment is presumed to be proper, absent evidence that there was a violation in the standard of care); *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (finding allegations of medical malpractice not sufficient to establish a constitutional violation); *Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (noting

---

[2] The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

that negligence is not compensable as a constitutional deprivation). As such, the Amended Complaint fails to state claims upon which relief can be granted against against Defendants Ngwa and Kaur.

Fifth, the Amended Complaint alleges that, on or about July 26, 2020, Defendant Burns commanded Plaintiff and the other inmates housed in Unit 2K to return to their assigned cells and secure the doors after a physical altercation broke out, but Defendant Burns "neglected to release/unlock the cell doors from the command module," and as such, Plaintiff and others "were unable to comply with the command." (D.I. 12 at 3.) The Amended Complaint also alleges that, approximately one hour later, Plaintiff informed Defendant Burns that Plaintiff was experiencing a medical emergency with his vision, and Defendant Burns responded by saying that Plaintiff "should be okay in 30-40 minutes," but Plaintiff's vision never recovered. (D.I. 12 at 4.)

As a threshold matter, any claim first raised by way of the Complaint based on the above factual allegations appears to be time-barred, as it is outside the two-year window that preceded the filing of the Complaint. (*See* D.I. 2.) Claims brought under § 1983 are subject to the statute of limitations for personal injury actions in the state in which the suit is brought. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006). In Delaware, the statute of limitations for personal injury claims is two years from the date the cause of action accrued. *See*

11

10 Del. C. § 8119; *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted). Accrual of a cause of action under § 1983 begins when a plaintiff "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). Based on the facts alleged, accrual of a cause of action based on the events above appears to have begun on or about July 26, 2020, when Plaintiff's left eye was pepper sprayed, and he so knew. (*See* D.I. 12 at 3-4.) Accordingly, the statute of limitations for such a cause of action would have expired on or about July 26, 2022, over a month before the Complaint in this case was filed. (*See* D.I. 2.)

Moreover, the Amended Complaint appears to name Defendant Burns as a party to this action in his official capacity, as a Delaware state official, *see* D.I. 12 at 1-2, 9, and the Amended Complaint seeks compensatory and punitive damages from Defendant Burns, with no request for prospective injunctive relief, *see id.* at 13. As such, Eleventh Amendment sovereign immunity for the State of Delaware, and qualified immunity for Delaware state officials, appear to prohibit Plaintiff from seeking the relief requested from Defendant Burns, as well as all other similarly situated Defendants.

"Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057,

57 L. Ed. 2d 1114 (1978) (per curiam)). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Jones v. Attorney Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018) (per curiam). Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This is the case because § 1983 permits suits only against "persons," *id.*, and "state officials acting in their official capacities are not 'persons' under § 1983." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996).

The exclusion of state officials acting in their official capacities from the definition of "persons" under § 1983 provides Delaware state officials qualified immunity, by way of Delaware's sovereign immunity, such that damages are unavailable under § 1983 when Delaware state officials are sued in their official capacities. *See id.* Although a suit seeking prospective injunctive relief can be brought against state officials in their official capacities under § 1983, *see Merritts v. Richards*, 62 F.4th 764, 771-73 (3d Cir. 2023), the Amended Complaint does not seek prospective injunctive relief. As such, the Amended Complaint fails to state claims upon which relief can be granted against Defendant Burns, as well as other similarly situated Defendants.

In an abundance of caution, Plaintiff will be given an opportunity to file a

13

Second Amended Complaint remedying the deficiencies discussed above. If Plaintiff chooses to file a Second Amended Complaint, it will wholly replace the Complaint (D.I. 2) and the Amended Complaint (D.I. 12) and Plaintiff may not add any new claims. Plaintiff may only amend the allegations in the Amended Complaint to remedy the above-discussed deficiencies. Plaintiff should be advised that filing a Second Amended Complaint that fails to remedy the above-discussed deficiencies will likely result in dismissal with prejudice. Alternatively, if Plaintiff chooses not to timely file a Second Amended Complaint, and instead takes no further action, the Amended Complaint will be dismissed without prejudice and this case will be closed.

## V. CONCLUSION

For the reasons discussed above, the Court grants Defendants' Motions to Dismiss. (D.I. 23, 24.) The Court will give Plaintiff an opportunity to file a Second Amended Complaint (D.I. 12) as set forth above.

An appropriate Order will be entered.